**WO**                                                                                          MW

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Erick John Dodakian, | No. CV-21-01184-PHX-MTL (ESW) |
| Plaintiff, | |
| v. | **ORDER** |
| Andrew Butters, et al., | |
| Defendants. | |

Defendant Andrew Butters has filed a Motion for Summary Judgment (Doc. 56). The Motion is fully briefed (Docs. 64-65),[1] and as follows, it will be granted.

**I.  Background**

Plaintiff Erick John Dodakian brought this pro se civil rights action pursuant to 42 U.S.C. § 1983 and state law. (Doc. 1.) On October 27, 2021, Dodakian filed a seven-count First Amended Complaint (Doc. 13) against the City of Tempe, the Tempe Police Department, Tempe Police Officer Andrew Butters, and several fictitiously named parties, alleging claims arising from his arrest on July 8, 2019.

Defendants subsequently moved to dismiss the amended complaint for failure to state a claim, and on March 14, 2022, all counts were dismissed except for Dodakian's Fourth Amendment excessive force claim against Butters. (Docs. 14, 19.)

. . . .

---

[1] Plaintiff was informed of his rights and obligations for opposing a motion for summary judgment pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc). (Doc. 61.)

## II. Legal Standards

### A. Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

. . . .

. . . .

### B. Qualified Immunity

Government officials are entitled to qualified immunity from civil damages under 42 U.S.C. § 1983 unless (1) the alleged facts, taken in the light most favorable to the party claiming injury, show the official's conduct violated a constitutional right, and (2) that right was "clearly established" at the time of the violation, such that a reasonable official would have known his conduct was unlawful under the circumstances. *District of Columbia v. Wesby*, 583 U.S. ___, 138 S. Ct. 577, 589 (2018); *see Pearson v. Callahan*, 555 U.S. 223, 230-32, 235-36 (2009) (courts may address either prong first depending on the circumstances in the case); *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011). While there need not have been "a case directly on point" that mirrors the specific facts, "clearly established" requires that existing law placed the unlawfulness of the officer's conduct "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted); *see Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1167 (9th Cir. 2011) ("the relevant inquiry is whether the state of the law at the time of the official conduct complained of was such as to give the defendants 'fair warning' that their conduct was unconstitutional").

### C. Fourth Amendment Excessive Force

The Fourth Amendment's safeguard against unreasonable seizures prohibits the use of excessive force by law enforcement officers during an arrest. *Graham v. Connor*, 490 U.S. 386, 395 (1989). To determine whether a Fourth Amendment violation has occurred, courts evaluate whether the officer's use of force was "'objectively reasonable' in light of the facts and circumstances confronting [the officer]," considering: (1) the nature and gravity of the intrusion—i.e., the type and amount of force inflicted; (2) the governmental interests at stake—i.e., the officer's need for the force used, taking into account the severity of the crime, the threat to safety posed by the plaintiff, and whether the plaintiff was actively resisting or attempting to evade arrest; and (3) whether on balance, the intrusion was justified by the governmental interests. *Graham*, 490 U.S. at 396-97; *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010);

*Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003). "The 'reasonableness' of a particular use of force [is] judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," *Graham*, 490 U.S. at 396, and "[w]here an officer's particular use of force is based on a mistake of fact, [courts consider] whether a reasonable officer would have or should have accurately perceived that fact," *Torres*, 648 F.3d at 1124.

### III.   Facts[2]

On July 8, 2019, at about 6:30 p.m., Tempe Police Officer Butters responded to a call from Springtree Condominiums reporting a man that "look[ed] like he [was] on drugs" who was digging through a dumpster and "throwing trash everywhere." (DSOF ¶¶ 1-5.) When Butters arrived at the apartment complex, a resident directed him to the dumpster, where he encountered Dodakian and a large assortment of items scattered on the ground.[3] (DSOF ¶¶ 6-7; Video 01:11-01:17.)

As Butters began to approach closer, he told Dodakian to "grab a seat" and "sit down" on the curb. Dodakian continued to move around, stating "I'm going over here" and "I'm going over to my stuff"; Butters instructed him again to "sit down" and "grab a

---

[2] Butters has filed a Statement of Facts (DSOF) (Doc. 57) and supporting exhibits that include two video recordings (DSOF Ex. D and F), one from Butters' body camera (Video 00:00-35:55) and one from Tempe Police Officer Matthew Warbington's body camera. Dodakian appears to argue that the videos have been doctored (*see e.g.*, Doc. 64 at 4 ¶¶ 11-23), but has not identified any portion of the videos that has been altered, nor are there any apparent breaks, sudden jumps, or other indications that the video has been altered. The facts are therefore recounted "in the light depicted by the videotape[s]," *Scott v. Harris*, 550 U.S. 372, 380 (2007), but any factual ambiguities in the videos are viewed in Dodakian's favor, *Blankenhorn v. City of Orange*, 485 F.3d 463, 468 n.1 (9th Cir. 2007).

Dodakian has filed a document entitled "Plaintiff's Statement of Facts" (Doc. 64) that is largely comprised of incomprehensible arguments, evidentiary objections, and conclusory facts that are unsupported by any evidence in the record. Dodakian did not file a controverting statement of facts as required by the local rules and discussed in the Court's *Rand* Order. The Court will therefore consider Butters' relevant supported facts undisputed unless they are clearly controverted by Dodakian's first-hand verified allegations or other evidence in the record. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004). Lastly, although Dodakian was granted leave to file a CD containing Butters' testimony in Tempe Municipal Court (*see* Doc. 67), it does not appear that he ultimately filed that non-electronic exhibit.

[3] Butters states the items included things such as railroad spikes and broken glass shards. (DSOF ¶ 8.) Dodakian disputes this allegation on evidentiary grounds. (Doc. 64 at 5 ¶ 38.)

seat." (DSOF ¶ 9; Video 01:17-01:24.) Dodakian continued to move around and asked Butters "why do I have to grab a seat," to which Butters answered, "because there's a whole bunch of things that could be weapons here and I don't want you to grab any of them, so sit down over here, this way." (Video 01:24-01:34.)

Dodakian then turned away and moved towards the items near the dumpster. Butters grabbed and held Dodakian's arm and told him—"you're going to go in handcuffs." Dodakian responded "let go of me"; Butters replied, "then just sit down." Dodakian then began to pull his arm away from Butters while yelling out "no dude, let go of me." (DSOF ¶¶ 10-14; Video 01:34-01:43.) Dodakian pulled his arm free from Butters grasp, but then turned and moved towards Butters stating, "I said let go of me!" Butters responded by pushing on Dodakian's collarbone with his right hand, holding Dodakian's right shoulder with his left hand, and putting his right leg behind Dodakian's left leg,[4] which caused Dodakian to fall to the ground and land on his side. (DSOF ¶¶ 15-16, 18-19; Video 01:43-01:45.) (*Id.*)

Once on the ground, Butters instructed Dodakian to roll over so that he could handcuff him and then attempted to roll him over from his side to his stomach. Dodakian struggled with Butters and yelled out, among other things, "I got a bad back" and "dude, I'll fucking punch you, dude—I ain't rolling over." (DSOF ¶¶ 20-22; Video 01:45-02:01.) Butters repeated commands to roll over and Dodakian lied face-up on his back. Butters then placed his shin on Dodakian's midsection, held down his arms with his hands, and told him several more times to roll over. Dodakian expressly refused, struggled to release his arms, and called out, among other things, "get the fuck off of me." (DSOF ¶¶ 23-25; Video 02:01-02:53.) Dodakian again refused to roll over and Butters stated he would wait for another officer to arrive. Butters then pushed down Dodakian's right arm with his left knee, pushed down on Dodakian's left arm with his left hand, and used his free hand to

---

[4] Butters states that he "conducted a leg sweep by placing his right leg behind Dodakian's left leg and pushing." (DSOF ¶ 10.) Dodakian claims there was "no leg sweep" but states his fall was caused by Butters "putting his leg behind [his] leg" and "pushing [him] at the same time." (Doc. 64 at 8 ¶ 62.)

- 5 -

radio for backup assistance. (DSOF ¶¶ 24-27; Video 01:46-01:55.)

Butters continued to hold Dodakian down for several minutes, during which time Dodakian fluctuated between emotional states. Officer Warbington then arrived, and the two officers rolled Dodakian on to his stomach, handcuffed him behind his back, sat and stood him up, then walked him to the curb where he sat for questioning. (DSOF ¶¶ 29-30; Video 05:28-06:10.) The Tempe Fire Medical Rescue Department was later called to the scene and transported Dodakian to St. Luke's Medical Center for evaluation. (Docs. 64 at 7 ¶ 53; 70-2; 70-3.)

On July 9, 2019, Dodakian was charged in the Tempe Municipal Court, Case No. 19-026375-1, with disorderly conduct in violation of Arizona Revised Statutes § 13-2904(A)(1), criminal littering in violation of § 13-1603(A)(1), and criminal trespass in violation of § 13-1502(A)(1). He was acquitted of all three charges on August 27, 2019. (Doc. 64 at 10 ¶ 2.)[5]

**IV.    Discussion**

    **A.    Constitutional Violation**

        **1.    Nature and Quality of Intrusion**

Dodakian claims Butters used excessive force against him when (1) he "struck" Dodakian, in that he "brutal[l]y and abruptly pushed [and] violently place[d] additional force on [Dodakian's] chest" "while putting his leg behind" Dodakian's leg, and (2) he "b[ore] weight" on Dodakian while he was lying on the ground. (Docs. 13 ¶ 28; 64 at 7-8 ¶¶ 59-62.) Dodakian alleges the use of force resulted in a "complete tear" of his anterior cruciate ligament (ACL) in his right knee. (Docs. 13 ¶ 59; 64 at 7 ¶¶ 56-59.)

Drawing all reasonable inferences in Dodakian's favor, Butters' use of force was capable of inflicting some pain and injury. The force used was therefore non-trivial, but minimal in amount. *See Williamson v. City of National City*, 23 F.4th 1146 (9th Cir. 2022) (force used in pulling handcuffed plaintiff backward by her arms and wrists after she went

---

[5] *See* Tempe Municipal Court Case Search, https://courtcaseinfo.tempe.gov (ref. 19-026375-1) (last accessed Mar. 15, 2023).

- 6 -

limp and refused to cooperate was "minimal"); *O'Doan v. Sanford*, 991 F.3d 1027, 1037 (9th Cir. 2021) ("The reverse reap throw maneuver that Officer Sanford used—a tripping technique that knocked O'Doan off balance and allowed Sanford to bring O'Doan to the ground—[] involved a modest deployment of force"); *Garcia v. City of Santa Clara*, 772 Fed. App'x 470, 472 (9th Cir. 2019) (force used, "which included a leg sweep, control holds, and a punch to the face" was "relatively mild force"); *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994) (use of force consisting of "physical pressure administered on [the plaintiffs'] limbs" was "minimal" and "less significant than most claims of force").

### 2. Governmental Interests

While Dodakian's suspected offenses of trespass, disorderly conduct, and littering were not severe or inherently dangerous, a reasonable officer faced with Dodakian's erratic behavior and escalating physical resistance would believe Dodakian was actively resisting and posed a potential threat to himself and others. *See Anderson*, 483 U.S. at 643-44. When Butters repeatedly told Dodakian to sit down, away from items he explained could be used as weapons, Dodakian questioned and repeatedly disregarded his instructions, and then stepped away from Butters towards the items. Thus, even if the items on the ground were not possible weapons or in Dodakian's immediate reach,[6] a reasonable officer under the circumstances could have believed Dodakian was noncompliant, unpredictable, and potentially dangerous, such that it was objectively reasonable to take hold of Dodakian's arm to prevent the confrontation from escalating.

When Butters advised that he would be handcuffed, Dodakian refused and immediately began to struggle to pull his arm away. And when Dodakian successfully pulled his arm free from Butters' grip, he turned and moved towards Butters yelling "I said let go of me!" A reasonable officer faced with Dodakian's physical resistance, combined with the tense and rapidly evolving circumstances presented, would have feared for his own safety, such that it was objectively reasonable to push Dodakian away and down to

---

[6] Dodakian claims no threat existed because the items on the ground were over 4 yards away. (*See* Doc. 64 at 5-6 ¶¶ 38, 43.)

the ground to restrain him. *See Graham*, 490 U.S. at 397; *Doan*, 991 F.3d at 1037 (officers "acted reasonably in deciding to bring O'Doan under control" when "O'Doan repeatedly resisted officers' commands to stop and then turned to the officers in a threatening manner"); *Garcia*, 772 F. App'x at 472 (leg sweep and control holds were reasonable to control suspect who "resisted arrest and attempted to punch the officers while the officers were trying to subdue him"); *cf. Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003) (finding force excessive where agent "grabbed [plaintiff] by her arms, forcibly threw her to the ground, and, twisting her arms, handcuffed her" when she only passively resisted by asking for a search warrant, "did not pose a safety risk[,] and made no attempt to leave"). While Dodakian appears to claim he was compliant and did not resist Butters or "show signs of hostility" (Docs. 13 ¶ 28; 64 at 5-6 ¶ 38), his allegations are plainly refuted by the video evidence and are, therefore, insufficient to create a triable issue of fact. *See Scott*, 550 U.S. at 378-81; *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) ("Arpin's conclusory statement that she 'did not resist arrest in any way,'" was insufficient to defeat summary judgment).

While on the ground, Dodakian refused Butters' instructions to roll over to be handcuffed, continued to struggle to release his arms, and yelled out he would "punch" Butters. Even if Dodakian sought to escape Butters' grasp to avoid a painful position, his continued physical resistance and verbal threats justified the continued application of force to hold Dodakian's body and arms on the ground until the other officer arrived to assist in handcuffing him. *See Tatum v. City and Cnty. of San Francisco*, 441 F.3d 1090, 1097 (9th Cir. 2006) ("Faced with a potentially violent suspect, behaving erratically and resisting arrest, it was objectively reasonable for Smith to use a control hold to secure Fullard's arm long enough to place him in handcuffs."); *Acosta v. City of Costa Mesa*, 718 F.3d 800, 826 (9th Cir. 2013) (where suspect was "flailing his body to actively resist the police[,] [h]olding him by his limbs to control him and prevent him from injuring an officer was [] not unreasonable or excessive"). To the extent Dodakian alleges he did not threaten or resist Butters on the ground, that claim is also plainly discredited by the video evidence

and does not create a triable issue of fact. *See Scott*, 550 U.S. at 378-81; *Arpin*, 261 F.3d at 922.

### 3. Balance

On balance, when taking the facts in the light most favorable to Dodakian, to the extent they are not clearly discredited by the video evidence, no reasonable jury could conclude that Butters' use of force was objectively unreasonable under the circumstances. *Scott*, 550 U.S. at 381 n.8; *Miller*, 340 F.3d at 964. Butters' use of force–pushing Dodakian to the ground with a leg technique and applying pressure to his arms and torso while Dodakian was lying face-up on the ground–involved a non-trivial, but minimal amount of force. On the other hand, the countervailing need to use that force was significant. Dodakian ignored and acted contrary to Butters' commands to sit on the curb and submit to handcuffs, which were designed to facilitate questioning and protect both Butters and Dodakian. While standing, Dodakian pulled his arm free of Butters' grip, then turned back towards him aggressively, and on the ground, Dodakian was volatile and continued to struggle. Under these circumstances, Butters' use of force to restrain and handcuff Dodakian was an objectively reasonable response to "tense, uncertain, and rapidly evolving" circumstances. *Graham*, 490 U.S. at 397; *Tatum*, 441 F.3d at 1091.

Dodakian appears to argue the amount of force used was excessive because there were less intrusive means available and Butters "did not communicate or 'use verbal commands'" warning him that force would be used. (Doc. 64 at 9-10.) The Court, however, finds no support in the record for these arguments. Although officers are not required to use the least intrusive degree of force possible, *Forrester*, 25 F.3d at 807, there is no evidence that Butters applied more force than necessary under the circumstances to restrain Dodakian to handcuff him. Butters did not punch, kick, or deliver physical blows in a manner capable of causing serious physical injury. Similarly, Butters gave Dodakian numerous warnings. Butters told Dodakian repeatedly to sit on the curb to be questioned, away from items he believed were potentially dangerous, and when Dodakian ignored those commands and proceeded to do the contrary, Butters told him he would be

handcuffed and held on to his arm. Butters repeatedly told Dodakian to roll over on the ground to be handcuffed, and when Dodakian verbally refused and physically resisted, Butters told him he would continue to hold him until another officer arrived to help handcuff him. Dodakian therefore failed to show there is a genuine dispute of material fact for trial as to whether the Defendants' use of force was excessive in violation of his Fourth Amendment right against unreasonable seizures.

### B.  Clearly Established

Even if the evidence established Butters' use of force amounted to a Fourth Amendment violation, the law was not sufficiently clear that any reasonable officer under the same circumstances would have known that use of force was unconstitutional. Dodakian has not identified any legal authority, nor is the Court aware of any, that holds, beyond debate, that an officer's use of force is unconstitutionally excessive when: the officer grabs a suspect's arm, pushes a suspect to the ground using a leg sweep maneuver, and applies pressure to the suspects arms and body while lying face-up on the ground to restrain and handcuff them, where the suspect repeatedly ignored and acted contrary to the officer's instructions, and then verbally and physically resisted the officer's efforts to handcuff them. *See O'Doan,* 991 F.3d at 1037 (finding it was not clearly established that officer's use of "reverse reap throw" which involved tripping suspect and bringing him to the ground, was unconstitutionally excessive); *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017) ("an officer [does not] violate clearly established law when he progressively increases his use of force from verbal commands, to an arm grab, and then a leg sweep maneuver, when a misdemeanant refuses to comply with the officer's orders and resists, obstructs, or delays the officer in his lawful performance of duties such that the officer has probable cause to arrest him in a challenging environment."); *see also Emmons v. City of Escondido*, 921 F.3d 1172, 1175 (9th Cir. 2019) (concluding precedent involving use of force in response to *passive* resistance was not sufficiently clear where officer performed a takedown of non-dangerous man who disobeyed the officer's command by closing an apartment door). This is not a "rare obvious case" in which "the unlawfulness

1  of the officer's conduct is sufficiently clear even though existing precedent does not
2  address similar circumstances." *Wesby*, 138 S. Ct. at 590 (internal quotation marks
3  omitted).

4      Accordingly, because Dodakian has failed to meet his burden on summary judgment
5  to show a violation of a constitutional right, or that such right was clearly established,
6  Butters is entitled to qualified immunity. *Shafer*, 868 F.3d at 1118. Summary judgment
7  will therefore be granted.

8  **IT IS ORDERED:**

9      (1)    The reference to the Magistrate Judge is **withdrawn** as to Defendants'
10 Motion for Summary Judgment (Doc. 56) and the Motion is **granted**.

11     (2)    The Clerk of Court shall enter judgment accordingly and terminate this case.
12 Dated this 20th day of March, 2023.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge